IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PAUL AND CATHY DONOHOE; TORIAN DONOHOE; KYLE AND ANNA DONOHOE; DAVID AND KAYCE ARTHUN, AND CASTLE CREEK RANCH L.P., <br><br>                     Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, FOREST SUPERVISOR MARY ERICKSON, DISTRICT RANGER KEN COFFIN, <br><br>                     Defendants. | CV 20-137-BLG-SPW <br><br> ORDER RE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |

Before the Court is Plaintiffs Paul and Cathy Donohoe, *et al.*'s ("Plaintiffs or Donohoes") Motion for Summary Judgment, filed August 18, 2021 (Doc. 24), and Defendants U.S. Forest Service, *et al.*'s ("Defendants or USFS") Cross-Motion for Summary Judgment, filed September 22, 2021 (Doc. 27). Plaintiffs responded to Defendants' Motion on October 15, 2021. (Doc. 29). Defendants filed a reply on November 5, 2021. (Doc. 30). Both Motions are deemed ripe and ready for adjudication.

## I.     RELEVANT BACKGROUND

In 2002, the USFS rebuilt the Initial Creek Campground in the Beartooth District in south central Montana near Red Lodge. This project included an expansion of the stock parking lot for the campground.

In 2004, because trailer parking was limited at the nearby West Fork Stillwater trailhead, the USFS established the Initial Creek Campground as a stock trailhead. The only access between the campground and the West Fork Stillwater trailhead, at the time, was via Initial Creek Road, necessitating those on horse-back to use the same roadway as motor vehicles.

In 2007, the USFS began exploring the viability of a project to create non-motorized trail access from the campground to the trailhead ("Bridge Project"). The proposed trail consisted of approximately 1 mile of an abandoned trail/road system known as the Bryant Road and trail. The Bryant Road had been abandoned for 80 years and considerable amounts of downfall and other vegetation had overtaken the path. To complete the proposed trail, the USFS needed to remove downfall and brush along 3,200 feet of the old road and 1,800 feet of the old trail. The USFS also proposed constructing a bridge across the West Fork Stillwater River as well as approximately 300 feet of new trail to complete the trail.

In 2014, the USFS secured a right-of-way on the land needed to construct the proposed trail. The USFS approved the Bridge Project via a Decision Memo on

March 6, 2015. The trail portion of the Bridge project was completed between 2016 and 2017. The bridge itself was constructed in the summer of 2019.

In 2017, the USFS also began exploring the possibility of utilizing more of the Bryant Road and trail to connect the Initial Creek Campground to the Castle Creek Trailhead ("Trail Project"). The Castle Creek Trailhead is accessed via a different roadway than the Initial Creek Campground and the Castle Creek Trailhead contains a large parking lot. The USFS investigated the section of the Bryant Road between the campground and trailhead and concluded that, although the access-way had been abandoned for so long, the roadway was in good condition. The proposed Trail Project would consist of 1.5 miles of the existing Bryant roadway and 0.5 miles of new trail constructed on USFS land to circumvent private property. The USFS approved the Trail Project via Decision Memo on April 15, 2019.

On September 16, 2020, Plaintiffs filed the present lawsuit arguing that the USFS violated the National Environmental Policy Act ("NEPA"), the Endangered Species Act ("ESA"), and the National Forest Management Act ("NFMA") in approving the Bridge Project and the Trail Project.

## II.   LEGAL STANDARD

Judicial review of administrative decisions is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. 5 U.S.C. § 706(2)(A); *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990). In reviewing an agency action under the APA, the Court must determine whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983). "An agency acts contrary to the law when it fails to abide by and implement the direction and intent of Congress or when it acts contrary to its own rules and requirements." *Upper Missouri Waterkeeper v. United States Envtl. Prot. Agency*, 377 F. Supp. 3d 1156, 1162 (D. Mont. 2019). Review under this standard is narrow, and the reviewing court may not substitute its judgment for that of the agency. *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

**III.   DISCUSSION**

Two motions are currently before the Court. Plaintiffs filed a motion for summary judgment asserting that (1) the USFS violated NEPA by improperly segmenting the Bridge Project from the Trail Project and by failing to properly scope the Projects; (2) the USFS violated NFMA by failing to follow the Custer National Forest and National Grasslands Land and Resources Management Plan ("Forest Plan") in approving the Trail Project; and (3) the USFS violated the ESA by failing to properly consider the effects the Projects would have on the endangered grizzly bear population in the area. Defendants filed a cross-motion for summary judgment arguing that Plaintiffs have no standing to challenge the Bridge Project and that Defendants complied with NEPA, NFMA, and the ESA in approving the Trail Project. The Court shall address each argument below.

### A. Plaintiffs' Standing to Challenge the Bridge Project

Defendants challenge Plaintiffs' standing regarding the Bridge Project, arguing that Plaintiffs have demonstrated no injury-in-fact related to the Bridge Project and cannot seek redress for the Project as it was completed several months before Plaintiffs filed their Complaint. Plaintiffs respond that they have suffered injury-in-fact due to their geographic nexus to the Bridge Project. Further, because Plaintiffs have shown a procedural injury, Plaintiffs assert that the required redressability element of standing is satisfied here "by showing that had the Forest

Service complied with NEPA's requirements they could have a [sic.] had a meaningful say in the process." (Doc. 29 at 13-14).

"Article III standing requires that a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *California v. Bernhardt*, 460 F.Supp.3d 875, 884 (N.D. Cal. May 18, 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). A plaintiff must establish an injury in fact by demonstrating that they suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (*Id.*) (internal quotations removed). To sufficiently allege a procedural injury, the plaintiff must demonstrate that "the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011). If a plaintiff sufficiently establishes a procedural injury, the causation and redressability elements are relaxed. *California v. Azar*, 911 F.3d 558, 573 (9th Cir. 2018). The party invoking federal jurisdiction bears the burden of establishing each element of standing. *California v. Bernhardt*, 460 F.Supp.3d at 884.

Here, Plaintiffs allege that their concrete injury stems from the USFS's failure to properly scope the Bridge Project and notify Plaintiffs of the USFS's

- 6 -

intended action near their property. Plaintiffs further contend that new trail construction "will destroy the pristine nature of the area," "carries infestations of noxious weeds," and otherwise produces harmful effects on Plaintiffs' enjoyment of the area that Plaintiffs would have opposed had they received proper notice. (Doc. 29 at 13).

The Court finds these allegations sufficient to establish Plaintiffs' procedural injury in fact. NEPA regulations require the agency to make diligent efforts to notify and include public participation on proposed actions, especially those persons who may be affected by the proposed action. 40 C.F.R. § 1506.6(a)-(b) (2020). Agencies accomplish this goal through scoping, by holding scoping meetings, publishing scoping information, or using "other means to communicate with those persons or agencies who may be interested or affected . . . ." 40 C.F.R. §1501.9(c) (2020). Thus, the scoping process was designed to protect a concrete interest of an affected party. By allegedly failing to properly scope the Bridge Project, the USFS violated a concrete interest of the Plaintiffs due to their geographic nexus to the Project. *See Pub. Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1015 (9th Cir. 2003) *rev'd on other grounds* (holding that a party's geographic nexus to the location suffering an environmental impact satisfies the concrete interest test in a procedural injury claim).

However, Plaintiffs have failed to demonstrate how that procedural injury is redressable by an order from this Court. The entire Bridge Project was completed in the summer of 2019. Plaintiffs did not file their lawsuit until September 16, 2020. Defendants argue this precludes the Court from redressing any perceived issues with the Bridge Project and that Plaintiffs implicitly acknowledge this by failing to request redress of any injury caused by the Bridge Project in their Complaint. Plaintiffs' only response to this argument was to point out that the redressability requirement is relaxed once a party establishes a procedural injury and that Plaintiffs have satisfied redressability here by demonstrating that had the USFS complied with NEPA, Plaintiffs could have had "a meaningful say in the process." (Doc. 29 at 13-14). The Court is not convinced by this argument. It is true that the redressability requirement is a lower bar to meet in a procedural injury case such as this. However, Plaintiffs have failed to provide any case or legal argument that the redressability requirement disappears entirely. Plaintiffs' Complaint seeks several avenues of redress regarding the Trail Project, including setting aside the 2019 Decision memo and enjoining the implementation of the Project. (Doc. 1 at 62). The Complaint does not seek any similar redress regarding the Bridge Project, and none would have been available to Plaintiffs at the time they filed this lawsuit. Therefore, the Court finds that Plaintiffs have failed to meet

the redressability requirement and have not established standing to challenge the Bridge Project.

## B. Whether Defendants Violated NEPA

The National Environmental Policy Act promotes two goals. "First, it places upon [a federal] agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Kern v. U.S. Bureau of Land Management*, 284 F.3d 1062, 1066 (9th Cir. 2002) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983)). There are no substantive environmental standards contained in NEPA. Instead, the Act accomplishes its goals by establishing procedures requiring federal agencies to take a hard look at those environmental consequences. *Id.*

Plaintiffs contend that Defendants violated their obligations under NEPA in two ways. First, the USFS illegally segmented the Trail Project from the Bridge Project in considering the environmental impacts of the proposed action and therefore failed to fully analyze the impacts of the entire action. Second, Plaintiffs assert the USFS failed to adequately inform the public of its intent to construct the Trail Project when the agency failed to properly scope the Project.

### i.    Illegal Segmentation

Under NEPA, "connected, cumulative, or related actions must be assessed together for environmental impact." *Barnes v. Babbitt*, 329 F.Supp.2d 1141, 1160 (D. Ariz. July 20, 2004) (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 410 (1976)). Segmenting a project into individual projects for analysis is improper "when the segmented project has no independent justification, no life of its own, or is simply illogical when viewed in isolation." *Id.* (quoting *One Thousand Friends of Iowa v. Mineta*, 364 F.3d 890, 894 (8th Cir. 2004)). However, "NEPA does not require an agency to treat actions as connected if they have independent utility and purpose." *Tinian Women Ass'n v. U.S. Dep't of Navy*, 976 F.3d 832, 837-38 (9th Cir. 2020). Two projects have independent utility when "one of the actions might reasonably have been completed without the existence of the other." *Id.* at 838 (quoting *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 969 (9th Cir. 2006). Independent utility may be found even if the two projects benefit from each other's presence or have overlapping goals. *Id.*

Plaintiffs argue that the USFS illegally segmented the Bridge Project from the Trail Project when the agency conducted its environmental impacts analysis because neither the Bridge Project nor the Trail Project have independent utility. To support this assertion, Plaintiffs point out that the Bridge Project begins at the West Fork Stillwater Trailhead, crosses the newly constructed bridge, then the trail heads Northeast until it terminates at another point along the West Fork Stillwater

River where hikers or horseback-riders must ford the river to access the Initial

Creek campground. Plaintiffs assert that a trail that ends in fording a river is

"inconsistent with the concept of providing safe access for horse riders." (Doc. 25

at 13). Because the expressed purpose of the Bridge Project and the Trail Project

was to provide a safer alternative to accessing the West Fork Stillwater Trailhead,

Plaintiffs believe that the Bridge Project was never meant to ultimately terminate at

the Initial Creek Campground but to follow on to the Castle Creek Trailhead—the

route of the Trail Project. Therefore, Plaintiffs assert that the two Projects were

actually devised as one, large trail project and Defendants have attempted to cover

this up and segment the Projects to avoid a more extensive environmental impact

analysis. Defendants admit to as much, according to Plaintiffs, in a Project

Description Form describing the Trail Project as "the second phase of the overall

objective of providing safer and better access and facilities for stock users in the

West Fork of the Stillwater drainage." (Doc. 25 at 13) (quoting B000457).

Defendants respond that there is no evidence supporting Plaintiffs' theory

that the USFS conducted a cover-up operation in the years between conceiving and

implementing the Bridge Project and conceiving the Trail Project. Further,

Defendants argue that, even if Plaintiffs did have evidence supporting their claim,

the two Projects have independent utility and NEPA does not require Defendants

to analyze their environmental impacts together. Defendants state that "it would

have been impossible for the Forest Service to segment the NEPA analysis for the two projects because the Trail Project was not conceived until ten years after the Bridge Project was initiated and two years after it was approved." (Doc. 28 at 22-23). Defendants then point to several documents in the administrative record demonstrating that the USFS assessed an approximately one-mile section of the old Bryant Road for the Bridge Project as early as 2005. A000001-04. However, the rest of the Bryant Road was not inspected until 2017 when the USFS was attempting to determine its suitability for the Trail Project. B000023; B000457-60; B000484. Defendants assert these documents prove the USFS conceived the two Projects separately and years apart.

Regardless, Defendants contend the two Projects have independent utility and the USFS was under no NEPA obligation to conduct an environmental impact analysis of the Projects' cumulative effects. The Bridge Project created a safer alternative for horseback-riders to access the West Fork Stillwater Trailhead from the Initial Creek Campground and alleviated parking concerns at the Trailhead for stock users, according to Defendants. While it is true that the Bridge Project ends in fording the river at the campground, Defendants assert that Plaintiffs have provided no evidence demonstrating that fording the river at that location is dangerous or impossible. Further, Defendants state that the "later developed Trail Project would benefit from the Bridge Project because it would use the bridge and

- 12 -

some of the same trail constructed as part of that project to provide additional

access to the campground and trailhead, and to connect the West Fork Stillwater

and the Myers/Lodgepole Creek trail systems." (Doc. 28 at 24-25). Thus,

Defendants' argument goes that while both projects benefit from each other, they

each have utility independent of the other.

      The Court is persuaded by Defendants' arguments. Whether evidence exists

demonstrating that the USFS conceived of the two Projects at the same time or not,

the Bridge Project and Trail Project clearly have independent utility. Each Project

shares an overlapping goal of providing alternative and safe access for horseback-

riders. Yet, this overlapping goal does not diminish that each Project might

reasonably have been conceived without the other. The Bridge Project provides

access between the West Fork Stillwater Trailhead and the Initial Creek

Campground and alleviates parking concerns for stock trailers. The Trail Project

connects the Initial Creek Campground and the Castle Creek Trailhead and the

additional parking available at that site. Based on these functions, the Court finds

that the Bridge Project and Trail Project have independent utility and that

Defendants did not act arbitrarily or capriciously in violation of NEPA by

analyzing the environmental impacts of each project separately.

      **ii.**    **Inadequate Scoping**

NEPA requires agencies to "use an early and open process to determine the scope of issues for analysis in an environmental impact statement, including identifying the significant issues and eliminating from further study non-significant issues." 40 C.F.R. § 1501.9(a) (2020). Agencies must invite the participation of those likely affected by the proposed action including "Federal, State, Tribal, and local agencies and governments, the proponent of the action, and other likely affected or interested persons . . . ." 40 C.F.R. § 1509.1(b) (2020). To accomplish this goal, agencies may hold meetings, publish the relevant scoping information, or use other means to ensure the information reaches the necessary parties. 40 C.F.R. § 1509.1(c) (2020). However, "[b]ecause of the nature and complexity of a proposed action determine the scope and intensity of analysis, no single scoping technique is required or prescribed." 36 C.F.R. § 220.4(e)(2) (2020).

Plaintiffs claim the USFS's scoping efforts were inadequate here and therefore in violation of NEPA. The bulk of Plaintiffs' argument regards those scoping methods used for the Bridge Project. However, as the Court has already determined Plaintiffs have no standing to challenge the Bridge Project, the Court has no jurisdiction to entertain those assertions. Regarding the Trail Project, Plaintiffs state that "[w]hile the Forest Service's efforts in scoping the Project were marginally improved for [the Trail Project], they still speak to checking a procedural box more than obtaining meaningful public input." (Doc. 25 at 17)

(edits in original). Plaintiffs admit that the USFS mailed notice of the proposed Trail Project on March 2, 2018, and provided until March 16, 2018, to receive public comment. Yet, Plaintiffs argue this public comment period was not adequate and speculate that the "relatively short deadline for comments may have been even shorter. March 2, 2018 was a Friday; it is likely the scoping letters sent by mail never left the USFS District Office in Red Lodge until the following Monday— further truncating the limited time recipients had to respond with concerns." (Doc. 25 at 17-18). Plaintiffs themselves received their notice letter on March 16, 2018, and Plaintiffs assert they had to make rushed and incomplete statements of concern in order to meet the public comment deadline. Plaintiffs contend that Defendants could have initiated the scoping process much earlier—in 2017, for example, when the USFS began work on the Bridge Project and began exploring the feasibility of the Trail Project.

In response, Defendants state that the USFS engaged in public outreach through phone calls, letters and emails to interested parties. In all, the USFS sent out 58 letters and emails and received seven written responses. (Doc. 28 at 28); B000024. Of those responses, only one was negative—the Plaintiffs' response. Defendants assert that the USFS then engaged in email and in-person dialogue with the Plaintiffs extending outside of the public comment window in order to address those concerns. Thus, the USFS engaged in meaningful outreach, provided

14 days for interested parties to participate and comment on the proposal, and engaged with the Plaintiffs after the 14-day window had expired to further address their concerns. Defendants contend these actions satisfied the scoping requirements for the Trail Project.

The Court agrees with Defendants and finds that the USFS's efforts to scope the Trail Project complied with its obligations under NEPA. As Plaintiffs themselves agree, "NEPA does not specify a specific type or amount of scoping or public participation, [but] no scoping is completely inconsistent with the goals of NEPA . . . ." (Doc. 30 at 24). The administrative record demonstrates that the USFS clearly engaged in scoping efforts through phone calls, emails, and letters. The USFS further engaged with the Plaintiffs on their specific concerns. It is unclear what further scoping efforts Plaintiffs would have preferred other than speculation that the notice letters were mailed late or that the USFS could have begun scoping efforts earlier. However, given the deference afforded federal agencies to define and enact the scoping activities necessary for the specific project, the Court cannot say that Defendants scoping efforts here violated NEPA.

## C. Whether Defendants Violated the NFMA

The National Forest Management Act "and its implementing regulations provide for forest planning and management by the Forest Service on two levels: (1) forest level and (2) individual project level." *Native Ecosystems Council v.*

*Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012); 16 U.S.C. § 1604. "On the forest level, the Forest Service develops a Land and Resource Management Plan (forest plan), which consists of broad, long-term plans and objectives for the entire forest." *Id.* The Forest Service uses the forest plan when approving or denying specific projects. "While NFMA requires that the proposed site-specific actions be consistent with the governing Forest Plan, the Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference." *Id.* Failure to comply with the forest plan may represent a violation of NFMA. However, agency decisions challenged under the NFMA may only be set aside "if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.*

Here, the relevant Forest Plan is the Custer National Forest and National Grasslands Land and Resources Management Plan. The Trail Project falls within Management Area E of that Forest Plan. Management Area E contains no specific goals or management standards for recreational trails.

Plaintiffs argue the USFS violated NFMA by (1) omitting the Forest Plan's directive that "trail management will be coordinated with grizzly bears needs in grizzly bear habitat to avoid conflicts and reduce user risks" from Trail Project's Decision Memo, and (2) by failing to consider "several other management standards" contained within the Forest Plan. (Doc. 25 at 20). Plaintiffs rely on

three priorities indicated in the Forest Plan regarding trail construction projects: (1) maintaining "existing trail in a safe, useable condition;" (2) meeting "nationally identified trail needs;" and (3) providing "additional dispersed recreation opportunities needed to relieve heavy use concentrations and increased demands." (Doc. 25 at 21). Plaintiffs assert that the Trail Project does not meet any of these priority standards under the Forest Plan and the USFS disregarded that part of the management standards requiring the agency to coordinate with the public for cultural resources.

Defendants respond that Plaintiffs' contentions are without merit and represent Plaintiffs' attempts to substitute the Forest Service's judgment for their own. Regarding the Decision Memo's omission of the trail standard to coordinate with grizzly bear needs, Defendants state that "this standard does not prohibit the construction of trails in grizzly-bear county, and Plaintiffs offer no explanation whatsoever as to how either project violates it." (Doc. 28 at 31). Regarding the trail priority standards, Defendants state that "the Trail Project is consistent with the Forest Plan, and it is precisely this type of judgment . . . to which the Forest Service is afforded substantial deference." (*Id.*).

Defendants further assert that the Trail Project fits in the third priority as the Project is intended to provide safe, alternative trail access to relieve congestion at the Initial Creek Campground and the West Fork Stillwater Trailhead. Finally,

Defendants contest Plaintiffs' ability to even raise their argument regarding

coordinating with the public for cultural resources because Plaintiffs failed to

allege that claim in their Complaint. This failure prevents Plaintiffs from raising

the argument in a motion for summary judgment, according to Defendants.

However, even if the argument was properly raised, Defendants contend that

Plaintiffs failed to show how the Forest Service violated that standard as the Forest

Service did consult with the Montana State Historic Preservation Office regarding

the Bryant Road and trail system.

The Court agrees with Defendants. While Plaintiffs have raised several

allegations regarding how they believe the USFS violated NFMA, Plaintiffs have

failed to support those allegations with evidence. For example, Plaintiffs point out

that the Decision Memo omitted reference to the management standard regarding

coordinating with the needs of grizzly bears. However, Plaintiffs provide no

evidence or argument as to why this standard would have prevented the

construction of the Trail Project or how the omission is a violation of NFMA.

Plaintiffs also argue the Trail Project does not fall into a priority category for

the applicable Forest Plan. While the Court does not agree with Plaintiffs that the

Trail Project does not fall into the third priority category to alleviate heavy use

concentrations in the area, Plaintiffs again fail to explain why those priority

standards prohibit the USFS from approving the Trail Project. As Defendants point

out, while the Forest Plan establishes priority standards to assist the Forest Service in allocating funds, the Forest Service retains discretion to approve trail construction projects to benefit the public even if those projects do not constitute a priority. The approval of a non-priority trail project does not represent an arbitrary or capricious decision on the part of the Forest Service simply by means of its non-priority status and Plaintiffs have failed to cite any provision in the Forest Plan or legal precedent stating otherwise.

Finally, Defendants are correct that Plaintiffs did not raise their argument regarding the Forest Service's failure to properly coordinate with the public for cultural resources analysis in the Complaint. As such, the Court shall not entertain the argument now when it was not properly pled in the Complaint, as required by law. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

### D. Whether Defendants Violated the ESA

Plaintiffs claim Defendants' approval of the Trail Project did not comply with the Endangered Species Act because Defendants relied on improper screening criteria and never analyzed the combined effects of the Trail and Bridge Project on the local grizzly bear population. Defendants respond that the decision to approve the Trail Project complied with all ESA requirements and also that this Court has

no jurisdiction to hear Plaintiffs' arguments as Plaintiffs failed to satisfy the ESA's notice requirement.

"The Endangered Species Act 'is a comprehensive scheme with the broad purpose of protecting endangered and threatened species.'" *Conservation Cong. v. Finley*, 774 F.3d 611, 615 (9th Cir. 2014) (quoting *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1106 (9th Cir. 2012)). Section 7(a)(2) of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1051 (9th Cir. 2013) (quoting 16 U.S.C. § 1536(a)(2)). If the proposed location for the action contains a threatened or endangered species, federal agencies must consult with Fish and Wildlife Service ("FWS") to determine the likely effects that action may have on that species. *Id.*

To sue a federal agency for a possible violation of the ESA, a party must first provide a notice of intent to sue ("NOI") at least sixty days prior to filing suit. 16 U.S.C. § 1540(g)(2)(A)(i); *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015). The notice requirement is intended to reduce the number of citizen-suits by providing federal agencies with an opportunity to take responsibility for the enforcement of environmental regulations and potentially

correct the alleged violations. *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 650.

"To provide proper notice of an alleged violation, a would-be plaintiff must '[a]t a minimum . . . provide sufficient information . . . so that the [notified parties] could identify and attempt to abate the violation.'" *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651 (quoting *SW. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 522 (9th Cir. 1998)). The complaining party need not list every grievance in the notice and a court may examine both the content of the letter and the recipients' behavior to determine the overall sufficiency of the notice. *Id.*

Here, Plaintiffs sent a formal notice of their ESA claim to Defendants on March 11, 2020. The notice letter explained that Plaintiffs believed "[t]he Forest Service, through misapplication of statutory and regulatory ESA consultation standards, illegally failed to consult with the U.S. Fish and Wildlife Service ("FWS") on the potential effects of the Project on grizzly bears." Admin. Record, C000001. Instead, Defendants relied on a Biological Assessment compiled in 2014 for the Bridge Project. The 2014 BA determined that the Bridge Project would likely not adversely affect grizzly bears and that concurrence from FWS was not necessary because the project fit within a pre-approved 2006 screening process. Plaintiffs' notice letter stated:

> In respect to the ESA, both the 2015 and 2019 Decision Memos state that the Forest Service prepared a Biological Assessment ("2014 BA"),

which concluded that the Project will have "no adverse effects" on "Federally listed threatened, endangered, sensitive, and management indicator wildlife and plant species" found or potentially found in the Project area. The conclusions of the 2014 BA, to the extent it contained any tied specifically to the Project, were based on a 2006 concurrence letter from the FWS covering a Forest Service Region One Programmatic Biological Assessment. The 2006 Programmatic BA covered activities in the Region that are "not likely to adversely affect" threatened or listed species, including grizzly bears. The Forest Service applied the screening criteria from the 2006 Programmatic BA and concluded that there was no need for consultation with or concurrence from the FWS. The problems with the Forest Service's use of the 2006 Programmatic BA to avoid consultation are deep and fundamentally at odds with the ESA, as is detailed in Section C below.

C000007. The letter goes on to describe the USFS's alleged ESA violations as

follows:

The Forest Service concluded no consultation was necessary by vacillating between splitting the Project into two parts or considering it as one, depending on which version would result in the most limited environmental review. The Forest Service manipulated the ESA screening criteria, which itself was based on the, [sic.] inaccurate assumption that grizzly bears would be delisted. The "NLAA" finding failed to take into account that clearing and reopening the long-abandoned access road and cutting new trail to create an additional access point into the remote West Fork of the Stillwater backcountry from a maintained and highly-traveled county road will, [sic.] expose grizzly bears to well-documented dangers, motorized roads where vehicles travel at higher speeds, and human/livestock conflicts.

C000012. The letter concluded:

The Forest Service failed to undertake the legally mandated process for analyzing and addressing impacts to listed species and their habitat, although it is apparent that the Project could harm grizzly bears through increased human use of and intrusion into a grizzly bear conservation area as well as causing an increased potential for bear-human conflicts that ultimately will cause greater bear mortality. Completion of the

consultation process is vital to compliance with the ESA's substantive mandates. "Absent consultation with [NMFS and/or FWS], there is no confirmation that [the agency's action] would avoid jeopardizing threatened or endangered species or adversely modifying critical habitat." *Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 21 (D.D.C. 2014) (citations omitted). Furthermore, the consultation should be based squarely on the true purpose and scope of the Project, not fragments designed to avoid review.

C000013.

On May 1, 2020, the USFS compiled a revised Biological Assessment for the Trail Project ("2020 Revised BA") and—in lieu of relying on the 2006 Programmatic BA screening criteria—on May 4, 2020, initiated Section 7 consultation with FWS. C00015-16. Based on the 2020 Revised BA, the USFS determined that "project activities *may affect but will not likely adversely affect* the threatened Canada lynx, lynx critical habitat, and threatened grizzly bear." C000015 (emphasis in original). The USFS requested a letter of concurrence with its determination from FWS. *Id*. On August 13, 2020, FWS concurred with the USFS's determination stating, "[t]he Service has reviewed the biological assessment and concurs with the determinations that the proposed action is *not likely to adversely affect* the threatened grizzly bear, the threatened Canada lynx, or designated critical habitat for Canada lynx. Therefore, pursuant to 50 C.F.R. § 402.13 (a), formal consultation on these species is not required." C000107 (emphasis in original).

- 24 -

Defendants argue the USFS's actions subsequent to receiving Plaintiff's notice letter resolved the alleged violations as the USFS prepared a revised BA analyzing the Trail Project and engaged in the requested Section 7 consultation with FWS. Plaintiffs did not file another NOI letter regarding any perceived failings of the 2020 Revised BA and consultation process before filing the present lawsuit. Therefore, Defendants contend that Plaintiffs failed to comply with the ESA's notice requirements and the Court has no jurisdiction to review Plaintiffs' claims that the USFS' approval of the Trail Project violated the ESA.

Plaintiffs respond that, while they did not file a second NOI letter, Defendants were nonetheless on notice that alleged violations remained after the USFS released its 2020 Revised BA. Specifically, Plaintiffs point to a letter Plaintiffs sent to Defendants on June 10, 2020, wherein Plaintiffs stated, "after reviewing the *Revised Biological Assessment for the Initial Creek Trail Reconstruction and Realignment Project*, we concluded critical aspects of the Biological Assessment remain flawed, incomplete, or improperly analyzed." C002106 (emphasis in original).

Upon reviewing the content of Plaintiffs' NOI letter and the subsequent behavior of both parties, the Court finds that Plaintiffs failed to comply with the ESA's notice requirement prior to filing their lawsuit and the Court has no jurisdiction to hear their ESA claims. Noted above, under the March 11 NOI

letter's Violations of the ESA section, Plaintiffs claimed that the USFS's finding
that no consultation was necessary failed to properly consider the possible
exposure of grizzly bears to "well-documented dangers, motorized roads where
vehicles travel at higher speeds, and human/livestock conflicts." C000012. The
NOI letter concluded that the "Forest Service failed to undertake the legally
mandated process for analyzing and addressing impacts to listed species" and that
Section 7 consultation was "vital to compliance with the ESA's substantive
mandates." C000012-13. Consequently, the USFS revised its biological assessment
and initiated the requested FWS consultation. C000015.

Plaintiffs are correct that, in certain situations, a complaining party need not
file a subsequent NOI letter or list every alleged violation in the initial letter when
the federal agency "understood or reasonably should have understood the alleged
violations." *Alliance for Wild Rockies v. Savage*, 2018 WL 10731198 at *7 (D.
Mont. Dec. 20, 2018) (citations omitted). However, that is not the case here. The
March 11 NOI complained that the USFS violated the ESA when the agency failed
to take into account certain impacts the Trail Project might have on grizzly bears
and failed to engage in formal consultation with the FWS. The letter based its
complaints on the USFS' use of the 2014 BA analysis finding no adverse impacts
on threatened species in the project area and the USFS' subsequent application of
the 2006 screening criteria. The USFS consequently revised its analysis in the 2020

- 26 -

BA and consulted with the FWS who concurred with the USFS' conclusions. It would be unreasonable to find that the USFS should have understood that the NOI's alleged violations persisted despite the USFS engaging in the requested relief and undertaking a new and distinct biological assessment.

Plaintiffs' argument that their June 10, 2020, letter preserved their ESA claims is unavailing. First, the letter was sent before the Section 7 consultation process was complete as acknowledged by the letter itself. Second, while the letter does state that the 2020 Revised BA remained flawed or incomplete, it fails to describe what those inadequacies are. C002106. A notice letter containing nothing more than vague accusations is insufficient to allow the federal agency to identify and address the claims. *See Alliance for the Wild Rockies v. Marten*, 464 F.Supp.3d 1169, 1173-74 (D. Mont. June 3, 2020). Finally, the purpose of the letter was to warn the USFS that Plaintiffs would view any attempt to begin implementation of the Trail Project prior to receiving the FWS' concurrence as a violation of the ESA and Plaintiffs would respond with appropriate legal remedies. The USFS received that concurrence on August 13, 2020. (C000109). There is no evidence that Plaintiffs submitted another letter or otherwise informed the USFS that specific ESA violations remained after the consultation process was completed. Therefore, the Court finds that Plaintiffs were required to file a second NOI letter prior to

filing this lawsuit which they failed to do. The Court has no jurisdiction to hear their ESA claims.

## IV.   CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 24) is DENIED.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment (Doc. 27) is GRANTED.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, the Clerk of Court is directed to enter judgment in favor of the Defendants and close the matter.

DATED this _29th_ day of March, 2022.

SUSAN P. WATTERS
United States District Court Judge